ALLEN, J., dissenting.
The court was of the opinion that on the pleadings and (165) exhibits made in the cause plaintiffs had shown no right to relief, and thereupon adjudged that defendants go without day. Plaintiffs excepted and appealed.
On the hearing it appeared that on 8 April, 1905, John Loyd, owner, with his wife, in consideration of $30, conveyed to the Swansboro Lumber Company the timber of every description on 12 inches and upward standing and growing upon three tracts of land aggregating 103 acres, with right to cut same at any time within ten years from date of the deed, with the privilege of renewal for ten years on request of grantee, etc., and on payment of $10 annually for said period. For the same consideration for like period the right to build all necessary tracks and tramways, etc., was also conveyed *Page 177 
with privilege of cutting any timber under said size to be used in construction. In same deed there was also conveyed a permanent right of way for a railroad 60 feet wide over said land, and with the stipulation that the owner should not cut during these periods any timber from said land under the size, 12 inches, except what was necessarily required for fencing; and further, that the parties of the first part should pay all taxes and assessments upon said land and timber so long as the contract should remain in force, etc. That soon after the execution of this deed and contract John Loyd, the owner, lied, leaving him surviving his widow, Dena (now intermarried with Gardock Morton), and two children, plaintiffs in this suit, Ernest Loyd and Junie Loyd, who were then and are now infants. That nothing further was done under the contract until 6 April, 1915, when the Swansboro Lumber Company, grantee in the deed, paid to Dena Morton $10 and took a written receipt therefor signed by said Dena and her then husband, Gardock Morton, specifying that the same was in payment for one year's extension on the timber deed of Mr. Lloyd and wife. And thereafter, to wit, on 25 March, 1916, the Swansboro Lumber Company, having conveyed their interest to the Pine Lumber Company, and Dena Morton having meantime qualified as guardian of plaintiffs, the said Pine Lumber Company paid to said guardian $50 and took a written receipt therefor specifying that same was a payment in full for five years extension for the right and privilege of cutting said timber.
It appeared further that the said Pine Lumber Company were preparing and intended to cut the timber from said land, claiming that they had the legal right to do so under their deed from the Swansboro Lumber Company and by virtue of the payments (166) referred to.
In a recent case before the Court, Lumber Co. v. Wells, it was said to be the correct deduction from many of our decisions on the subject "That standing lumber is realty," subject to the laws of devolution and transfer applicable to that kind of property, and that lumber deeds such as this convey an estate of absolute ownership defeasible as to all timber not cut and removed within the specified, period, citing Williams v. Parsons,167 N.C. 529; Midyette v. Grubbs, 145 N.C. 85; Lumber Co. v. Corey,140 N.C. 462.
And further, that stipulations for an extension of time are in the nature of options, and that they do not in themselves create any interest in the property but amount only to an offer to create such interest when the conditions are performed and working a forfeiture when not strictly complied with, citing Waterman v. Banks, 144 U.S. 394; Thacker v. Weston,197 Mass. 143, and other cases. And again, *Page 178 
that "where the time first provided for in a deed of this character has passed and it becomes necessary for the grantee to hold by reason of performance of the stipulation for extension that this estate or interest arises at the time the conditions are complied with, and in the absence of any provision in his deed to the contrary the price paid belongs to him who then has the estate, and from whose ownership the interest is then created. The option or privilege obtained to the extent of the right conferred is a contract attendant on the title, and as stated, unless otherwise provided in the deed conveying the title, the price for the interest in the proper performance of the conditions will inure to the owner. It is from his estate that this interest passes and he must receive the purchase price."
In further illustration of the principle it was held in another case in the same volume, Carolina Timber Co., v. Bryan, 171 N.C. 265, that when the owner has died, during the first period, nothing else appearing, the title descended to the heirs and that they and not the executor are entitled to receive the purchase money.
On the facts presented and a proper application of these principles approved in Mizell v. Lumber Co., 174 N.C. 68, and many other cases, we are of opinion that the restraining orders heretofore issued in the cause should be made permanent and defendants perpetually enjoined from any further cutting of timber. On the death of John Loyd, the owner, the land descended to the infant plaintiffs, his children and heirs at law, and on the record there is no valid claim or suggestion that any tender of the extension money was ever made to them within the time required for the first payment nor to any one having lawful right to create or convey a permanent interest in their property.
Until dower is allotted the possession and the right thereto (167) was in the heirs, and the widow as such had no power to bind them in any way concerning it. Fishel v. Browning,145 N.C. 71. The payment of the money to the widow, therefore, for the first year's extension just two days before the time limit had expired could not affect their interest, and there being no other payment within that time for the first year's extension, this of itself would work a forfeiture, for these contracts as stated are to be strictly construed, and the agreement requires that the extension money should be paid or properly tendered year by year. Eureka Lumber Co. v.Whitley, 163 N.C. 47; Rountree v. Cohn-Bock Co., 158 N.C. 153;Bateman v. Lumber Co., 154 N.C. 248; Product Co. v. Dunn,142 N.C. 471. And if it were open to consideration the attempted payment to the guardian is equally without effect. This being for the five years following the first year. A perusal of our statutes on the *Page 179 
subject will show that the power of a guardian to make disposition of his ward's real estate is very carefully regulated and a sale is not allowed except on petition filed, and the order must in all cases have the supervision and approval of the judge. Rev., secs. 1800, 1798, 1788, 1789. And this tender which, as we have seen, when rightly made serves frequently to create or convey an interest in the real estate of the infant ward, could not be sanctioned or made effective by the mere receipt of the guardian but would require a court proceeding where the ward's interest could be supervised and cared for, as the law contemplates and directs.LeRoy v. Jacobosky, 136 N.C. 443. An examination of the present contract affords us apt instance and illustration of the wisdom of the provisions of our law on the subject. The suggestion that by the terms of the deed the wife could receive the extension money as one of the grantors of the deed is without merit. It being made to appear that the land belonged to her deceased husband, if her name is included in the "granting clauses of the deed as one of the parties of the first part," this, prima facie, should only serve to pass the rights appertaining to her as wife of the owner, her inchoate right of dower, etc., and beyond that would be regarded as a mere formality. And even since the Martin Act empowering the wife to contract and deal as if she were a feme sole (Laws 1911, ch. 109), the covenants and stipulations in such a deed should not be allowed to affect her except to the extent of her interest, and would give her no power to bind the owners of the inheritance unless otherwise clearly and plainly expressed in the instrument. Coble v. Barringer, 171 N.C. 445; 13 R.C.L., pp. 1325-26; 2 Develin on Deeds, sec. 955.
There is error, and this will be certified that a judgment for permanent injunction be entered.
Reversed.
Cited: Lumber Co. v. Valentine, 179 N.C. 425; Dill v. Reynolds,186 N.C. 296; Austin v. Brown, 191 N.C. 627; Bank v. Lumber Co.,193 N.C. 759; Jenkins v. Strickland, 214 N.C. 445; Morehead v. Harris,262 N.C. 342.