A. D. WARD v. JOHN ALBERTSON AND THE HILTON LUMBER
COMPANY.

(Filed 25 March, 1914.)

1. Contracts—Options—Deeds and Conveyances—Statute of Frauds
—Registration—Statutes.

An option on lands is a conditional contract for a short period of time on the part of the owner that upon the payment of the contract price and the performance of the conditions named he will convey the same to the holder of the option; and while an agreement of this character is not a completed contract to convey the lands, it comes within the statute of frauds and our registration laws.

WARD *v.* ALBERTSON.

2. Contracts—Options—Consideration—Deeds and Conveyances.

The agreed price for lands upon which an option of purchase has been obtained and the opportunity afforded the owner to sell, form the actual consideration upon which such contracts rest; and a further cash consideration of $5 is adjudged sufficient to bind the contracting parties.

3. Contracts — Options—Deeds and Conveyances—Equity—Specific Performance.

The holder of a valid and binding option for the purchase of lands is entitled to specific performance of his contract.

4. Contracts—Options—Deeds and Conveyances—Tender.

Where a valid and binding option for the sale of lands has been registered, and the owner has since then and contrary to its terms sold and conveyed them to another, it is required of the holder of the option, having notice of the conveyance, to make a lawful tender to the vendee, in accordance with the terms of his option; but where the vendor and his vendee are both parties to the action brought to enforce specific performance of the option, and the latter denies any rights of the plaintiff to recover, the tender of the agreed purchase price becomes unnecessary.

APPEAL by defendant from *Whedbee, J.,* at January Term, 1914, of DUPLIN.

Civil action for specific performance of contract for sale of timber.

On the hearing it was properly made to appear that on 14 November, 1912, plaintiff, for and in consideration of $5 then paid, obtained an agreement in writing from defendant, John Albertson, in terms as follows:

Received of A. D. Ward $5, and I agree that if he pays me $995 prior to 1 January, 1913, to convey to him all the timber and trees 12 inches in diameter and upward 12 inches above the ground, with the usual rights of way and a term of ten years to remove the same, situate on my Dixon Charity Fund tract of 119 acres and my E. A. Farrior tract of 12 acres situate in Kenansville Township, Duplin County, North Carolina, adjoining each other and adjoining the lands of Kittie Farrior, Silas Barden, A. J. Pickett, R. B. Murray, and others. Timber to be reserved for firewood and ordinary plantation purposes on this my home farm.

Witness my hand and seal.          JOHN ALBERTSON.     [SEAL]

That on 20 November, 1912, this paper, having been duly probated, was filed in office of register of deeds of Duplin County at 8 :44 o'clock,. and was duly registered on 21 November, 1912; that on 18 November, 1912, said Albertson, by telegram, withdrew or attempted to withdraw the offer of sale contained in said written agreement, and also wrote said Ward to that effect, inclosing Ward's check, originally given, which said check was immediately returned by Ward, and Albertson, having refused to take same out of office, the postmaster returned same to plaintiff, and offer of payment is made in pleadings, etc., in addition to balance due on purchase; that on 21 November, 1912, said Albertson sold and conveyed the timber, referred to and described in the contract, to the defendant the Hilton Lumber Company, which said conveyance was duly filed for registration in Duplin County on 21 November, 1912, and registered 23 November, 1912; that on 24 November, 1912, said A. D. Ward, by letter, notified defendant Albertson that he would purchase the timber according to the terms of the option, and on 26 December he tendered the $1,000 to Albertson, in gold coin, which tender was refused, defendant notifying Ward that the option was not binding, and that he would not convey the timber; that on 26 November plaintiff A. D. Ward notified the defendant the Hilton Lumber Company of his decision to purchase the timber under the terms of the. contract, and also of the tender made to Albertson; that he was ready and would continue in readiness to pay for the timber, and demanded performance of contract made with Albertson. On 27 December defendant company, by letter, notified plaintiff, in effect, that they claimed ownership of the lumber under their deed, and declined to comply with plaintiff's demands. It was further admitted that A. D. Ward has at all times been ready, able, and willing to pay the $1,000, and that no part of the timber has yet been cut.

There was judgment for specific performance, on payment of $1,000, etc. Defendant excepted and appealed.

*G. R. Ward and J. A. Gavin, Jr., for plaintiff.*

*Stevens & Beasley, H. D. Williams, and E. K. Bryan for defendant.*

HOKE, J. On the argument it was chiefly urged for error: (1) That the contract was not one coming within our registration laws, and there being no evidence of notice *ultra* at the time of its purchase, the Hilton Lumber Company is not bound. (2) That the consideration of $5 paid by plaintiff is not sufficient to justify or uphold the remedy by specific performance. (3) There is no evidence of any tender of performance within the specified time, made to the defendant lumber company, but, in our opinion, on the facts in evidence, neither position may be allowed to affect plaintiff's recovery.

These contracts, by which one acquires, for limited period, the right to buy another's property, have a recognized place and fill an important purpose in our business life, and it is now very generally held, here and elsewhere, that in proper instances the remedy by specific performance is available to the holder. *Winders v. Kenan,* 161 N. C., 628; *Gaylord v. McCoy,* 158 N. C., 325; *Bateman v. Hopkins,* 157 N. C., 470; *Timber Co. v. Wilson,* 151 N. C., 154; *Hardy v. Ward,* 150 N. C., 385; *Watts v. Kellar,* 56 Fed., 1; *Ross v. Parks,* 93 Ala., 153; *Ide v. Leisar,* 10 Mont., 5; Pomeroy on Specific Performance, sec. 168. And in reference to the status or obligation of the proposed vendor, while it is frequently said and held that it constitutes only an offer to sell on his part, and does not amount to a contract to convey, this must be understood to refer to a complete or perfect contract to convey, for when the agreement concerns real property, both in its terms and purpose, it amounts to conditional contract to sell, and, in its spirit and meaning, comes well within our statute of frauds and of our registration laws, giving priority of right to him who first registers his instrument.

In Pomeroy on Contracts, sec. 169, the author, in speaking of options, said: "The contracts of this kind are really conditional agreements. Upon the happening of the conditions, that is, upon making the request or declaring the option, they become absolute," etc.

In 39 Cyc., p. 1232, it is said: "An option, in the proper sense, is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a

fixed price within a certain time. It is in legal effect an offer to sell, coupled with an agreement to hold the offer open for acceptance for the time specified, such agreement being supported by a valuable consideration, or, at common law, being under seal, so that it constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified." And in *Watts v. Kellar, supra, Judge Caldwell,* in delivering the opinion, referred generally to these contracts as follows: "An option to buy or sell land, more than any other form of contract, contemplates a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value. An option to buy or sell a town lot may be valuable when the party can have the contract specifically enforced, but, if he cannot do this, and must resort to an action at law for damages, his option in most cases will be of little or no value. No man of any experience in the law would esteem an option on a lawsuit for an uncertain measure of damages as of any value. The modern, and we think the sound, doctrine is that when such contracts are free from fraud, and are made upon a sufficient consideration, they impose upon the makers an obligation to perform them specifically, which equity will enforce."

In reference to the $5 paid by plaintiff as the consideration for his interest, it is the accepted position, in this State, that a "binding contract to convey land, where there has been no fraud, mistake, undue influence, or oppression, will be specifically enforced, and, as a rule, the mere inadequacy of price, without more, will not affect the application of the principle" (*Combes v. Adams,* 150 N. C., 64, citing *Boles v. Candle,* 133 N. C., 528, and *Whitted v. Fuquay,* 127 N. C., 68); and where the contract has been perfected by acceptance within the time or proper tender of performance, on suit for specific performance, the real consideration is the contract price, which must be paid before the interest is finally acquired, in this instance the $1,000, and, as to the option itself, which only provides for holding the privilege open for a short period of time and involving also the opportunity to effect a sale by the potential vendor, the $5 paid

may very properly be held as a sufficient consideration to bind the party (*Alabama Ry. v. Long,* 158 Ala., 301; *Ross v. Parks, supra; Smith v. Bangham,* 156 Cal., 359; Elliott on Contracts, sec. 232); and there is high authority for the position that, in States where this matter has not been regulated by statute, the seal itself conclusively imports a consideration. *Watkins v. Robinson,* 105 Va., 269; *Willard v. Taylor,* 75 U. S., 557; *Adams v. Canal Co.,* 230 Ill., 469. And on the failure to make tender to the Hilton Lumber Company, the authorities, as far as examined, seem to hold that, when the property, the subject-matter of the agreement, has been conveyed to a third person, and the fact is known to the purchaser, the tender required by the contract should be made to the assignee. *McLaughlin v. Royce,* 108 Iowa, 254.

The question, however, does not necessarily arise in this case, for all the authorities are to the effect that, "Where a party has disabled himself from performance, or has openly taken position denying the other's right, a formal tender is not required." In such case the injured party need only show a readiness and ability to perform. *Bateman v. Hopkins,* 157 N. C., pp. 470-474; *Bradford v. Foster,* 87 Tenn., 4; *Sharp v. West,* 150 Fed., 458; *McLeod v. Hendry,* 126 Ga., 167; Pomeroy on Contracts, sec. 361; 28 A. and E., p. 5.

In the citation to Pomeroy, it is said: "An actual tender by the plaintiff, before suit brought, is unnecessary when, from the acts of the defendant or the situation of the property, it would be wholly nugatory, a mere useless form. If, therefore, before or at the time of completion the defendant has openly or avowedly refused to perform his part or has declared his intention not to perform at all events, then the plaintiff need not make a tender or demand before suit; it is enough that he is ready and willing and offers to perform, in his pleadings."

On careful examination, we find no error in the record, and the judgment for plaintiff is affirmed.

No error.